OPINION
{¶ 1} Defendants-appellants, Robert J. Brocker, Jr., M.D. (Dr. Brocker) and the Neurological Diagnostic Clinic, appeal from the judgment of the Mahoning County Court of Common Pleas granting plaintiffs-appellees, Janyce and John McGeary (Mr. and Mrs. McGeary), relief under Civ.R. 60(B).
 {¶ 2} This case arises from a medical malpractice claim against appellants. The events leading up to the lawsuit as alleged in appellees' complaint are as follows. In October 1987, Mrs. McGeary underwent a craniotomy to remove an acoustic neuroma. In 1992 Dr. Brocker, an employee of the Neurological Diagnostic Clinic, examined Mrs. McGeary for a postoperative evaluation. Dr. Brocker referred Mrs. McGeary for an MRI to rule out a recurrence of the acoustic neuroma. Appellees assert that Dr. Brocker represented to them that he would advise them if the MRI revealed any abnormal findings. The MRI revealed a mass of one centimeter that was highly suspicious for a recurrent acoustic neuroma. Appellees claim that Dr. Brocker negligently failed to inform them or their family physician of this finding. In 1996, Mrs. McGeary underwent another MRI that revealed the acoustic neuroma had grown to approximately three centimeters. Mrs. McGeary did not learn of the results of the 1992 MRI until November 18, 1996. Because of Dr. Brocker's negligence and the delay in diagnosis of her condition, Mrs. McGeary required a surgical procedure and also suffered permanent left side facial paralysis.
 {¶ 3} Appellees originally filed their complaint on January 21, 1997. They voluntarily dismissed the complaint without prejudice and then refiled on January 4, 1999. Appellants filed a motion for summary judgment on January 28, 1999, asserting appellees were required to provide expert testimony to support their medical negligence claim. Appellees requested and the trial court granted six extensions of time to respond to the summary judgment motion. Appellees stated that these extensions were necessary in order to locate an expert who could provide an affidavit to satisfy their burden in summary judgment. The last motion for extension of time in the record was filed on September 20, 1999 and the court granted appellees 30 days to file a response.
 {¶ 4} Appellees' counsel, Atty. Martin F. White (Atty. White), asserts that before the October 1999 deadline, he dictated a motion for an indefinite extension of time in which to conduct discovery. This motion was never filed. According to Atty. White, at the time he prepared the motion he was inundated with work, his mother became seriously ill and passed away, and his office underwent secretarial changes that may have resulted in the motion never being transcribed and filed. Since the trial court never received a response to the summary judgment motion from appellees, it granted summary judgment in favor of appellants on November 4, 1999.
 {¶ 5} Atty. White asserts that he never received a copy of the judgment entry granting appellants' summary judgment. He asserts he continued to work on appellees' case throughout the year 2000 assuming that the trial court had granted the motion he dictated. Atty. White states that while reviewing appellees' file in September 2000, he noticed that his motion for an indefinite extension was not in the file. He then contacted the clerk of courts and learned that the court had granted appellants' summary judgment motion.
 {¶ 6} On November 3, 2000, appellees filed a Civ.R. 60(B) motion for relief from judgment. The trial court conducted a hearing on the motion at which Atty. White and the deputy clerk of courts testified. The court granted the motion for relief from judgment and vacated its previous summary judgment ruling. Appellants filed a notice of appeal on December 4, 2000. On January 19, 2001, this court dismissed appellants' appeal for lack of a final appealable order. Appellants then filed a motion for reconsideration and a motion to certify a conflict. We overruled the motion for reconsideration but granted the motion to certify a conflict. The Ohio Supreme Court ruled on the issue and held that the vacating of a summary judgment is a final appealable order.McGeary v. Brocker (2002), 94 Ohio St.3d 440. It remanded the case back to this court and we reinstated appellants' appeal on May 1, 2002.
 {¶ 7} Appellants raise one assignment of error, which states:
 {¶ 8} "THE TRIAL COURT ABUSED ITS DISCRETION BY SETTING ASIDE AND VACATING THE FINAL JUDGMENT ENTERED IN THIS CASE DUE TO THE CLAIMED MISTAKE, INADVERTENCE, OR EXCUSABLE NEGLECT OF THE PLAINTIFFS' ATTORNEY."
 {¶ 9} Appellants argue that the trial court abused its discretion by granting appellees' Civ.R. 60(B) motion. They claim that Atty. White's actions or inactions constitute inexcusable neglect. Appellants cite to several cases where courts found inexcusable neglect to exist. See GTEAutomatic Elec., Inc. v. Arc Industries, Inc. (1976), 47 Ohio St.2d 146
(failure to file an answer to a complaint was inexcusable neglect);Caruso-Ciresi, Inc. v. Lohman (1983), 5 Ohio St.3d 64 (failure to answer an amended complaint was inexcusable); Davis v. Immediate MedicalServices, Inc. (1997), 80 Ohio St.3d 10 (when a certificate of service stated that counsel was sent an amended complaint by ordinary mail, the court held that it was inexcusable neglect to fail to file an answer). Appellants argue that Atty. White's failure to respond to their summary judgment motion for unexplained reasons constitutes a "complete disregard for the judicial system." Additionally, appellants argue that appellees' Civ.R. 60(B) motion was not filed within a reasonable time.
 {¶ 10} In response, appellees cite to several cases where courts found excusable neglect to exist. Citing Moore v. Emmanuel FamilyTraining Ctr., Inc. (1985), 18 Ohio St.3d 64 (plaintiff's counsel never received a copy of discovery order, thus his failure to comply with the order was a result of mistake or excusable neglect); Kay v. MarcGlassman, Inc. (1996), 76 Ohio St.3d 18 (counsel's failure to file an answer stemmed from a reorganization of accounting system and was an isolated incident thus constituting excusable neglect); Colley v. Bazell
(1980), 64 Ohio St.2d 243 (doubt, if any should be resolved in favor of the motion to vacate the judgment); Pennington v. Brocker (May 1, 1998), 7th Dist. No. 97-CA-25 (no basis to conclude that trial court abused its discretion in granting 60[B] motion where counsel established that a faulty affidavit was due to his own inadvertence).
 {¶ 11} The Ohio Supreme Court set out the controlling test for Civ.R. 60(B) motions in GTE Automatic Elec., Inc., 47 Ohio St.2d 146. The court stated:
 {¶ 12} "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." Id. at paragraph two of the syllabus.
 {¶ 13} An appellate court will not reverse a trial court's ruling on a Civ.R. 60(B) motion absent a showing of abuse of discretion. Cermakv. Cermak (1998), 126 Ohio App.3d 589, 598. Abuse of discretion connotes more than an error in judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 14} The trial court determined that appellees were entitled to relief under Civ.R. 60(B)(1) for mistake, inadvertence, surprise, or excusable neglect. In reaching this decision, the trial court made the following findings:
 {¶ 15} "1. The 60(B) motion was filed within a reasonable time under the circumstances and was filed within one year of the date of the judgment;
 {¶ 16} "2. Atty. White did dictate a motion for leave to respond to appellants' motion for summary judgment in a timely manner and he believed the motion was filed and granted by the court;
 {¶ 17} "3. Atty. White either did not receive notice of the court's summary judgment or, if his office did receive it, he was never made aware of it;
 {¶ 18} "4. Atty. White's office continued to work on appellees' case during the year 2000 under the mistaken belief that the case was still pending;
 {¶ 19} "5. Upon discovery of the court's judgment in September or October 2000, Atty. White sought the opinion of a medical expert to demonstrate to the court that appellees' case has merit;
 {¶ 20} "6. Dr. Hitselberger's (appellees' expert) affidavit was not available by the deadline for filing a 60(B) motion, but Atty. White immediately forwarded it to the court upon receipt;
 {¶ 21} "7. Atty. White's conduct was due to mistake, inadvertence or excusable neglect; and
 {¶ 22} "8. Under the circumstances of this case, other reasons also justify relief from the November 4, 1999 judgment." (November 28, 2000 Judgment Entry).
 {¶ 23} The trial court demonstrated that it carefully considered this case. It noted that it was sensitive both to appellants' position, believing this case had concluded, and to the fact that the law prefers that cases be resolved on their merits. The court observed that Atty. White confessed his error and accepted responsibility for the consequences if the case was not reinstated. It went on to observe that Atty. White is a "competent, diligent, respected lawyer whose difficult personal situation at the time contributed to the problems herein, and whose unrefuted testimony clearly establishes that his failure to timely respond to and contest [appellants'] Motion for Summary Judgment which led to the Court's granting summary judgment in favor of [appellants] was due to mistake, inadvertence, or excusable neglect."
 {¶ 24} Appellants do not contest that appellees have a meritorious claim to present. Appellees filed a copy of Dr. Hitselberger's affidavit, which states Dr. Brocker breached the standard of care and this resulted in Mrs. McGeary's significant facial paralysis. Thus, the first element of the GTE test is not in dispute.
 {¶ 25} As to the second GTE requirement, the evidence presented at the hearing on the 60(B) motion supports the trial court's finding of mistake, inadvertence or excusable neglect. Atty. White testified that he dictated a motion asking for additional time and, for reasons he could not explain, the motion was never filed. (Tr. 13-14). He stated he believed that the motion had been granted as his office continued to work on appellees' case throughout the year of 2000. (Tr. 15-16). Atty. White further testified that in September 2000 he noticed his motion for an extension was not in the file while going through the file in preparation for meeting with an expert. (Tr. 17). He stated that he then contacted the clerk's office and learned of the summary judgment. (Tr. 17). Atty. White testified he never received the court's ruling on appellants' summary judgment motion. (Tr. 18). Atty. White stated that he immediately intensified his search for an expert, located Dr. Hitselberger and filed his 60(B) motion. (Tr. 18-19). Additionally, Kathi McNabb Welsh, the chief deputy clerk of courts, testified that although the docket entry showed that a copy of the summary judgment ruling was sent to Atty. White, it was possible that it was not sent. (Tr. 47-48, 50).
 {¶ 26} Appellants' argument concentrates on asserting that the circumstances in this case do not qualify as excusable neglect. However, the trial court never stated that it granted appellees' motion based solely on excusable neglect. In fact, the court specifically found that Atty. White's conduct was due to "mistake, inadvertence, or excusable neglect." (Emphasis added.) Atty. White's failure to respond to appellant's summary judgment motion can also be classified as inadvertence or mistake. In a recent decision by this court, in which we affirmed the granting of a Civ.R. 60(B) motion on the grounds of excusable neglect, we observed that the case "teeter[ed] on the verge of inexcusable neglect unreasonably accepted by the trial court due to what appear[ed] to be cumulative neglect." WFMJ Television, Inc. v. ATT Federal Systems-CSC, 7th Dist. No. 01-CA-69, 2002-Ohio-3013, at ¶ 22. Nonetheless, we deferred to the trial court, declining to hold that its decision crossed that line.
 {¶ 27} Additionally, appellants claim that Atty. White had many instances of neglect. On the contrary, this case focused on one omission by Atty. White, his failure to file an answer to appellants' summary judgment motion. Based on the facts and circumstances of this case as set out above, the trial court did not act unreasonably, arbitrarily or unconscionably in finding that mistake, inadvertence or excusable neglect was the cause of appellees' failure to respond to the summary judgment motion. Thus, appellees met the second element of the GTE test.
 {¶ 28} Since the trial court granted appellees relief under Civ.R. 60(B)(1), the one-year time limit within which to file the motion applies. The trial court granted appellants summary judgment on November 4, 1999. Appellees filed their Civ.R. 60(B) motion on November 3, 2000, thus complying with the one-year limit. November was also a reasonable time within which to file the motion since Atty. White learned of the summary judgment order that September. Thus, counsel filed the motion two months or less after learning of the summary judgment.
 {¶ 29} Based on the foregoing, the trial court did not abuse its discretion in granting appellees' Civ.R. 60(B) motion. Thus, appellants' sole assignment of error is without merit.
 {¶ 30} For the reasons stated above, the decision of the trial court is hereby affirmed.
Judgment affirmed.
Vukovich, J., and DeGenaro, J., concur.